IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FERN STREET INVESTMENTS, ) <br> LLC and FERN STREET CHACE ) <br> LANDING, LLC ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> K&F RESTAURANT PARTNERS, ) <br> LLC ) <br> ) <br>     Defendant. ) <br> ) | Case No. 2:13-cv-01935-MHH |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Fern Street Investment, LLC ("FSI") and Fern Street Chace Landing, LLC ("FSC") each owned a restaurant franchise in the Birmingham-Hoover, Alabama metropolitan market. The restaurants closed in 2013. The defendant, K&F Restaurant Partners, LLC, was the franchisor for the restaurants. (Doc. 1). In this lawsuit, FSI and FSC contend that K&F violated its franchise agreements with them. FSI and FSC allege that K&F withheld pertinent financial information and failed to perform other obligations on which the franchisees'

successful operation of the restaurants depended.[1] (Doc. 1). FSI and FSC asserts claims against K&F for: breach of contract; fraudulent suppression and/or misrepresentation; and negligence. (Doc. 1, ¶¶ 21-35).

K&F has moved to dismiss this action pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 10). K&F argues that neither FSI nor FSC has met the pleading requirements of Rules 8 and 9. (Docs. 10 and 16). Therefore, K&F asks the Court to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. (Docs. 10 and 16). FSI and FSC respond that K&F has neither acknowledged nor addressed the factual allegations in the complaint, allegations that satisfy Rules 8 and 9. (Doc. 15). For the reasons discussed below, the Court denies K&F's motion to dismiss.

## I. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard of Rule 8. In a complaint, a plaintiff must describe the factual basis for his claims, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47

---

[1] FSI and FSC entered Franchise Agreements with K&F on November 15, 2010 and June 25, 2012, respectively. (Doc. 1, ¶ 11). The two franchise agreements are essentially identical, and the Court refers to the agreements collectively. (Doc. 1 ¶ 11).

(1957)).  It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings based upon mere "labels or conclusions" or "naked assertions" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations."  *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012) (citing *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997)), and *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 823-24 (11th Cir. 2001)).

Rule 9 provides a heightened pleading requirement for fraud claims.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A description of "the circumstances constituting fraud" should include information regarding the nature of the alleged misstatement or omission, "the time and place" of the

3

statement, the identity of the person who provided or omitted material information, and the way in which the plaintiff relied on the misstatement or omission. *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

FSI and FSC each owned an Izzo's Illegal Burrito restaurant franchise in the Birmingham- area.  (Doc. 1, ¶ 11).  To make the two Izzo's restaurants successful, FSI and FSC "hir[ed] experienced store managers; properly staffed each location; invest[ed] significant amounts of personal capital; adher[ed] to all contractual obligations set forth in the Franchise Agreements; and stay[ed] current on all payments owed to Defendant."  (Doc. 1, ¶ 13).  FSI and FSC allege that "[d]espite these efforts, [they] consistently sustained losses until [they] were forced to cease operations in August of 2013 and October 2013, respectively."  (Doc. 1, ¶ 13).

In June 2010, K&F provided a franchise disclosure document to FSI.  The document "summarized certain provisions of the Izzo's franchise agreement and offered the opportunity to operate an Izzo's franchise." [2]  (Doc. 1, ¶ 10).  FSI and FSC also relied upon K&F's verbal and written representations when FSI and FSC

---

[2] K&F gives franchise disclosure documents to potential franchisees. The document provides all pertinent financial and corporate information regarding the franchise. A franchise disclosure document was attached to Fern Street's complaint as Exhibit "A". (Doc. 1, ¶¶ 17, 27-28). A complaint includes all documents attached to it as an exhibit or those incorporated by reference. Fed. R. Civ. P. 10(c); *see also Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 n. 7 (11th Cir. 2006).

decided to "mov[e] forward with [the] investment and tak[e] the necessary action to fund the investment." (Doc. 1, ¶ 14, ¶ 16). Specifically, FSI and FSC:

> relied on representations regarding initial start-up investment and capital contributions that [d]efendant deemed necessary to operate the franchise. According to a budget furnished by [d]efendant, the initial start up costs and capital contributions required was undervalued by nearly twenty percent (20%). In addition, [d]efendant profoundly underestimated the working capital necessary to operate the franchise for the first six (6) months after opening.

(Doc. 1, ¶ 14).  FSI and FSC state that the franchise disclosure document "conveyed a perceived soundness of the Izzo's business model ('Izzo's System')."[3] (Doc. 1, ¶ 17).  However, according to FSI and FSC, K&F did not, in fact, have "a workable business model and intentionally misrepresented this fact to [p]laintiffs, which induced [p]laintiffs to enter into the Franchise Agreements and suffer significant damages." (Doc. 1, ¶ 18).  Before FSI and FSC became franchisees of Izzo's, K&F had two other franchisees in Louisiana.  (Doc. 1, ¶ 18).  K&F "has since purchased one of these franchises and discontinued the sale of franchises all together." (Doc. 1, ¶ 18).

FSI and FSC allege that K&F's failure to adhere to its obligations under the franchise disclosure document and the franchise agreements caused them (FSI and FSC) to sustain losses, which ultimately forced them to close the two restaurants.

---

[3] The franchise disclosure document describes Izzo's System's techniques, processes, and procedures for menu items. Plans for marketing, restaurant establishment, purchasing, and inventory control methods, accounting methods, sales and promotional techniques, and personnel training also are described in the franchise disclosure document. (Doc. 1, ¶ 17).

5

FSI and FSC claim that K&F violated the franchise disclosure document and franchise agreements in the following ways:

> [K&F] (a) provided no demographic information related to either restaurant location; (b) required [p]laintiffs to purchase overpriced equipment and signage; (c) required [p]laintiffs to use an out-of-state marketing firm which was inexperienced and incapable of providing a proper marketing plan for the Birmingham-Hoover Metropolitan market; (d) failed to use or apply the two percent (2%) advertising fee in [p]laintiffs' Market Area or otherwise use for [p]laintiffs' benefit; (e) required [p]laintiffs to use its Aloha Point of Sales system, which improperly collected Louisiana state sales tax from customers instead of Alabama state sales tax causing [p]laintiffs to incur significant damages as Louisiana tax is lower; (f) required [p]laintiffs to purchase supplies and products which were overpriced and at a higher rate than other Izzo's locations owned by [d]efendant; (e) [sic] unreasonably withheld approval in allowing [p]laintiff to use local vendors for certain like-kind and quality products which would have no effect on the quality of [p]laintiff's products or facility; and (f) [sic] did not provide adequate or effective training to [p]laintiff's personnel; (g) [sic] upon information and belief, [d]efendant charged [p]laintiffs higher prices for certain required products than other franchisees or corporate owned restaurants.

(Doc. 1, ¶ 19). FSI and FSC seek compensatory damages for the losses they incurred as a consequence of K&F's conduct. (Doc. 1, pp. 1, 10).

## III. DISCUSSION

### A. Breach of Contract

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer*

*v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotations omitted).

In their complaint, FSI and FSC allege (1) that they entered into valid, enforceable franchise agreements with K&F (Doc. 1, ¶ 22); that they performed their obligations under the franchise agreements (Doc. 1, ¶ 23); (3) that K&F breached the franchise agreements in various ways (Doc. 1, ¶¶ 19, 24); and (4) that both franchisees "have been harmed and suffered damages." (Doc. 1, ¶ 25). According to the complaint, FSI and FSC were damaged because they "invest[ed] significant amounts of personal capital"[4] and "sustained losses until [both] were forced to cease operations." (Doc. 1, ¶ 13).

K&F is critical of the plaintiffs' damages allegations, but the Court finds those allegations adequate to survive a Rule 12(b)(6) motion. As a matter of federal pleading standards, the allegation places K&F on notice of the nature of the damages that FSI and FSC seek. Therefore, the Court denies K&F's motion to dismiss the breach-of-contract claim in count 1. *See South Florida Water Mgm't Dist,* 84 F.3d at 406.

## B.   Fraudulent Suppression or Misrepresentation

Under Alabama law, to state a claim for fraudulent suppression, a plaintiff must allege: "'(1) that the defendant had a duty to disclose material facts; (2) that

---

[4] FSI and FSC both are LLCs. The Court is unsure how either LLC invested "personal capital," but the parties may explore the issue in discovery.

the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff.'" *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 724-25 (Ala. 2009) (quoting *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n. 10 (Ala. 1997).  Similarly, to plead a fraudulent misrepresentation claim, a plaintiff must allege:  "(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff damaged as a proximate result of the reliance."  *Billy Barnes Enters. Inc. v. Williams*, 982 So. 2d 494, 499 (Ala. 2007) (internal quotations and citation omitted).

FSI and FSC allege that K&F owed them a duty to disclose information about K&F's flawed point-of-sales system that collected insufficient state taxes. (Doc. 1, ¶ 34).  The complaint also contains allegations that K&F should have disclosed the unworkable franchise business model, the lack of appropriate purchasing and inventory control methods, accounting methods, promotional techniques, and personnel training that was required for the survival of Izzo's franchises.  (Doc. 1, ¶ 29).  FSI and FSC also allege that suppression of these material facts induced them enter into the franchise agreements with K&F and caused them to sustain damages. (Doc. 1, ¶ 30).

These allegations are sufficient to state a claim for fraudulent suppression. K&F argues primarily that the Court should dismiss the fraudulent suppression claim because FSI and FSC have not alleged that K&F had a duty to disclose. (Doc. 16, pp. 4–5). Although K&F correctly points out that "the word 'duty' does not appear in the [c]omplaint at all until it is pled in Fern Street's negligence count," (Doc. 16, p. 5), FSI and FSC allege factual matter sufficient for the Court to determine whether K&F owed the plaintiffs a duty to disclose.

The plaintiffs' fraudulent misrepresentation claim is based on the franchise disclosure document. FSI and FSC allege that the information within the franchise disclosure document misrepresented the actual state of the franchise business model. (Doc. 1, ¶ 29). FSI and FSC also allege that K&F misrepresented the amount of the required initial investment, which was undervalued by twenty percent, and misrepresented the amount of working capital needed to operate an Izzo's restaurant for its first six months. (Doc. 1, ¶¶14, 33). FSI and FSC contend that these misrepresentations induced them to act, and they suffered damages as a result. (Doc. 1, ¶ 30).

K&F argues that FSI and FSC failed to identify the specific parts of the franchise disclosure document that K&F purportedly misrepresented. The Court disagrees. The plaintiffs not only attached the franchise disclosure document as "Exhibit A" to the complaint but also specifically alleged that K&F "suppressed or

misrepresented material information regarding the required initial investment and working capital necessary to suitably operate one of its franchises." (Doc. 1, ¶ 28). FSI and FSC have pled sufficient facts to avoid dismissal. *See Friedlander v. Nims*, at 814 n. 3. K&F will have no trouble finding the part of the franchise disclosure document that refers to the initial investment and working capital amounts. FSI and FSC alleged sufficient specific facts to maintain their fraudulent misrepresentation and suppression claims against K&F.[5] Therefore, the Court denies K&F's motion to dismiss these claims.

## C.  Negligence

To frame a negligence claim under Alabama law, the plaintiff must allege "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *QORE, Inc. v. Bradford Bldg. Co.*, 25 So. 3d 1116, 1123 (Ala. 2009) (internal quotations and citations omitted). For a plaintiff "to maintain a negligence action[,] the defendant must have been subject to a legal duty." *DiBiasi v. Joe*

---

[5] K&F argues that FSI and FSC did not state the time, place, or the person responsible for any statements to them, what the statements were, how they were misled or what K&F gained from the alleged misrepresentation. (Doc. 10, pp. 4-5). The Court disagrees. The plaintiffs allege that the fraud occurred prior to their purchase of the two Izzo's franchises, that the fraud caused them to buy the franchises, a benefit to K&F, and that documents relating to the sale of the franchises contained misleading information. Those allegations are sufficient.

10

*Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (internal quotation omitted).

FSI and FSC allege that K&F "knew or should have known" about its flawed, unworkable franchising system, that the amount of working capital needed to operate an Izzo's restaurant for its first six months of operation was "profoundly underestimated," and that the initial required investment was undervalued by twenty percent. (Doc. 1, ¶¶14, 33). Furthermore, plaintiffs allege that they "requested certain financial information, including vendor product pricing, which K&F refused to provide." (Doc. 1, ¶ 31). FSI and FSC assert that K&F had a duty to provide this information to them but breached that duty. (Doc. 1, ¶¶ 34-35). The plaintiffs assert that the breach was a "direct and proximate" cause of the damage they suffered. (Doc. 1, ¶ 35).

K&F argues that FSI and FSC did not provide facts in the complaint to show that K&F owed a duty to the plaintiffs. (Doc. 10, p. 5). Additionally, K&F contends that FSI and FSC's statement that "[the] [p]laintiffs suffered damages" is conclusory. (Doc. 10, p. 5).

The Court disagrees. (Doc. 10, p. 5). In Alabama, "the existence of a duty is a strictly legal question to be determined by the court." *DiBiasi*, 988 So. 2d at 461. Alabama courts review several factors to determine whether a duty exists, including: "(1) the nature of the defendant's activity; (2) the relationship between

11

the parties; and (3) the type of injury or harm threatened." *DiBiasi*, 988 So. 2d at 461. According to the complaint, the parties had a franchisor-franchisee relationship. (Doc. 1, ¶10). Due to the nature of this relationship, K&F had access to information FSI and FSC needed to successfully operate an Izzo's restaurant. This relationship placed K&F in a position of control and FSI and FSC in positions of reliance upon K&F. These allegations are sufficient to enable the plaintiffs' negligence claim to survive a Rule 12(b)(6) challenge.

Nevertheless, the Court questions whether FSI and FSC's negligence claim fails as a matter of law.

> Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract, because "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.,* 85 So.2d 436, 440 (Ala. 1956); *see also Barber v. Business Prods. Ctr.,* 677 So.2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son,* 122 So. 837, 840 (Ala.1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation).

*Lehr's Ironworks, LLC v. Rembrandt Enterprises, Inc.*, 2011 WL 6182092, at *4 (M.D. Ala. Dec. 13, 2011). It appears that FSI and FSC's negligence claim is based on FSI and FSC's allegations that K&F failed to perform its obligations under the franchise disclosure document and the franchise agreement. The complaint contains no independent or separate facts supporting the negligence claim.

The Court invites FSI and FCS to show cause why the Court should not dismiss the negligence claim pursuant to Federal Rule of Civil Procedure 1.  Rule 1 states:  "These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1; *see also Boschette v. Bach*, 925 F. Supp. 100, 101 (D.P.R. 1996) ("Dismissing a complaint that fails to state a claim is the proper means to bring about the just, speedy, and inexpensive determination of every action as mandated by the Federal Rules of Civil Procedure.")  (internal quotations and citations omitted);  *Danow v. Borack*, 197 Fed. Appx. 853, 856 (11th Cir. 2006) (district court must "provide notice of its intent to dismiss the claims for failure to state a claim and an opportunity for [the plaintiff] to respond prior to dismissing the claims").

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** K&F's Rule 12(b)(6) motion to dismiss.  **On or before March 18, 2015**, FSI and FSC shall **SHOW CAUSE** in writing why the Court should not strike their negligence claim from the complaint.

**DONE** and **ORDERED** this March 9, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE